United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 12, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-60759
Summary Calendar

WILLIAM HARRY WILSON,

Plaintiff-Appellant,

versus

DELTA STATE UNIVERSITY et al.,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Mississippi
(No. 2:2cv269-B-D)

Before GARZA, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:*

William Harry Wilson appeals the district court's ruling granting a motion for judgment as a matter of law ("JMOL") in favor of Delta State University and the individual defendants (collectively, "Delta State") in this employment discrimination action. Finding no error, we affirm.

---

* Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Wilson was employed by Delta State University as director of its Audio-Visual Center from 1983 to 2001. On October 26, 2000, Dr. David Potter, the president of the University, appointed Dr. Michelle Roberts as Chief Information and Planning Officer ("CIPO"). Potter did not advertise the CIPO position before appointing Roberts, but Delta State claims that such advertising was not necessary under the University's policy because the appointment was an internal promotion. Roberts became Wilson's supervisor and the relationship between Roberts and Wilson quickly deteriorated. From mid-March to mid-April of 2001, Roberts prepared a plan to consolidate the Audio-Visual Center and Instructional Technology Center into a new Technology Learning Center. This plan would eliminate Wilson's position, but Roberts allegedly had no intention of hiring Wilson to be the director of the new center because of their problematic relationship.

On April 20, Wilson met with Potter to discuss his frustration regarding the changes in the audio-visual and technology departments. He told Potter that Roberts was not qualified for the CIPO position and that she only got the job because she was having an affair with Dr. Leroy Morganti, a University administrator.

On April 24, Roberts proposed her plan to the University. The University approved the plan, and Wilson's position was eliminated. On June 29, Potter informed Wilson that his position was being eliminated and that his contract would not be renewed.

On November 21, 2002, Wilson brought this action in the United States District

2

Court for the Northern District of Mississippi, alleging that Delta State declined to renew his contract in retaliation for his complaints to Potter that Roberts was not qualified for the CIPO position and that she received the appointment because she was having an affair with Morganti. Wilson also brought a gender discrimination claim and a state breach of contract claim.

On July 23, 2004, the district court granted Delta State's motion for summary judgment on Wilson's gender discrimination claim and denied its motion for summary judgment on Wilson's retaliation and state breach of contract claims. Delta State made a motion to reconsider, and the district court determined that it did not have jurisdiction over the state law claims and accordingly dismissed those claims.

On August 2, a trial commenced on the retaliation claim. At the close of Wilson's case, Delta State moved for JMOL. The district court granted this motion and subsequently entered an order confirming its ruling, holding that Wilson had not made out a prima facie case of retaliation because he "did not engage in protected action in his conference with Dr. Potter," i.e., Wilson did not complain about an employment action which violated Title VII. The district court reasoned that Delta State's alleged preferential treatment of Roberts because she was having an affair with Morganti was not gender discrimination because "[p]referential treatment of a paramour, while obviously unfair, is not gender discrimination for the simple reason that such treatment discriminates not only against men but also against all other women in the world except the one paramour." Regarding Wilson's complaint that Delta State improperly failed to advertise the position, the court

3

pointed to cases holding that the failure to advertise a position does not amount to gender discrimination.

Wilson timely appealed the district court's judgment and order granting the motion for JMOL on the retaliation claim.

## II. STANDARD OF REVIEW

This Court reviews the district court's grant of JMOL de novo. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 218–19 (5th Cir. 2001). JMOL shall be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Id. (quoting Fed. R. Civ. P. 50(a)). The record must reveal "more than a mere scintilla of evidence" for this Court to reverse the grant of JMOL. Id. at 219.

## III. DISCUSSION

Where a plaintiff presents only circumstantial evidence of retaliation, as is the case here, the McDonnell Douglas framework guides our analysis. Montemayor v. City of San Antonio, 276 F.3d 687, 692 (5th Cir. 2001). Under McDonnell Douglas, Wilson must first establish a prima facie case of retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To do so, he must demonstrate: (1) that he engaged in an activity protected by Title VII; (2) that he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001).

An employee has engaged in protected Title VII activity if "he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427–28 (5th Cir. 2000) (emphasis omitted) (quoting 42 U.S.C. § 2000e-3(a)). The relevant clause is the opposition clause, because Wilson never participated in any formal Title VII proceedings, but merely complained to Potter. The opposition clause requires that the employee demonstrate that he or she had at least a "reasonable belief" that the opposed practice was unlawful. Id. at 428 (citing Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981)).

Wilson argues that he reasonably believed that Roberts got her job because of the affair, and that this favoritism amounted to discrimination in violation of Title VII. He relies on Payne, in which this Court addressed the issue "whether proof of an actual unlawful employment practice is necessary under the opposition clause, or whether an employee is protected from retaliation under the opposition clause if the employee reasonably believes that the employer is engaged in unlawful employment practices." Payne, 654 F.2d at 1138. This Court decided the latter, holding that "a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices." Id. at 1140. Wilson's reliance on this holding, however, is misplaced.

Payne involved an employee who believed the employer was engaged in an actual unlawful practice, even while in fact, the employer may not have been so engaged. This Court held in Payne that it was not fatal to the plaintiff's retaliation case that he failed to prove that the employer was actually discriminating against blacks in retail store employment opportunities. Id. at 1137.

Payne does not involve an employee who believes that an employer is engaged in an unlawful practice although that practice is not actually unlawful, which is the situation here.[2] The practice of which Wilson complained, that Roberts was unqualified and was hired because of an affair, is not a practice made unlawful by Title VII. "'[W]hen an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender.'" Ackel v. Nat'l Communications., Inc., 339 F.3d 376, 382 (5th Cir. 2003) (quoting Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 656 n.6 (5th Cir. 2002)). Whether Wilson believed to the contrary is immaterial. Even if his allegation that Roberts

---

[2] Payne does discuss and rely upon such a case, but that case is distinguishable. 654 F.2d at 1138 (discussing Berg v. La Crosse Cooler Co., 612 F.2d 1041 (7th Cir. 1980)). In Berg, the plaintiff was discharged after opposing as gender-based discrimination her employer's failure to provide pregnancy benefits. After she was fired, the United States Supreme Court held that a disability plan does not violated Title VII because of its failure to cover pregnancy-related disabilities. General Electric Co. v. Gilbert, 429 U.S. 125 (1976). The Seventh Circuit held that because the employee opposed a practice that she reasonably believed was unlawful under Title VII, her opposition was protected from retaliatory discharge, even though the practice was later determined not to be an unlawful practice. Berg is distinguishable from the present case, however, because the pregnancy issue was an unsettled question of law before the General Electric decision, and the plaintiff's belief that the practice violated Title VII was therefore reasonable.

6

obtained the position because of her affair were correct, such "paramour favoritism" is not an unlawful employment practice under Title VII, because "the fact that [Wilson] may have been terminated for complaining about favorable treatment received by [Roberts] is unrelated to [Wilson's] gender." Id. Because it is settled law in this Circuit that such paramour favoritism does not run afoul of Title VII, id., Wilson's alleged belief to the contrary could not have been reasonable.

Because we agree with the district court and hold that Wilson has not satisfied the first prong of a prima facie case of retaliation, that he engaged in a activity protected by Title VII, we need go no further in our analysis.[3]

## IV. CONCLUSION

Wilson failed to establish a prima facie case of retaliation; the decision of the district court granting Delta State's motion for JMOL is therefore AFFIRMED.

---

[3] Wilson argues that the district court erred in its holding that failure to advertise a position does not amount to gender discrimination by relying on cases that have been overturned by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (holding that "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"). We need not reach Wilson's argument because Reeves applies to whether a defendant's proffered explanation for an employment action is pretextual. Id. at 142–43 (explaining that after a plaintiff has established a prima facie case of discrimination, the burden of production shifts to the employer to articulate a non-discriminatory reason, and the plaintiff then bears the burden of persuasion to show that the proffered explanation is pretextual). Because Wilson has failed to establish a prima facie case, we need not address whether Delta State's explanation for appointing Roberts without advertising was a pretext for discrimination.